UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GLORIA SALTER,

          Plaintiffs,

    v.

ANTHONY J. PRINCIPI; and
U.S. DEPARTMENT OF VETERAN'S
AFFAIRS,

          Defendants.
                              /

NO. CIV. S-04-29 LKK/DAD

O R D E R

      Plaintiff, Gloria Salter, brings this suit against her employer, the U.S. Department of Veterans Affairs, alleging a failure to promote, hostile work environment, and retaliation. This matter comes before the court on defendant's motion for summary judgment, or in the alternative, summary adjudication of the issues. I decide the matter based on the papers and pleadings filed herein and after oral argument.

////

////

# I.

# FACTS

Plaintiff is an African-American woman employed by the U.S. Department of Veteran Affairs ("VA") in Sacramento as a GS-11 social worker. Def.'s SUF at ¶ 1. In the Summer of 2000, the VA announced a vacancy for a GS-12 social work coordinator. Id. at ¶ 4. Plaintiff, as well as two other people, applied for this position. Id. Because plaintiff was eligible for a promotion, she was to be given "first consideration," pl.'s Compl, Ex. A, and was accordingly interviewed for the position. Def.'s SUF at ¶ 6.

At the same time, a vacancy existed for the Chief of Social Work, a GS-13 position. Id. at ¶ 7. The two candidates considered for the GS-13 position were Barbara Martin, a Caucasian woman, and Janet Hargrove, an African-American woman. Id. at ¶ 8. Dr. Brian O'Neill, chief of staff, was the selecting official and conducted the interviews. Dr. O'Neill spoke with Martin only by telephone and therefore did not know her race. Id. at ¶ 9. Dr. O'Neill ultimately selected Hargrove for the GS-13 position. Id. at ¶ 10. However, because he felt that Martin was so "outstanding," he inquired into other available positions. Id. The Chief of Human Resources informed him that he could offer Martin the GS-12 social worker position as a lateral transfer, since Martin held a GS-12 position at the Department of Defense in Germany. Id. Thereafter, Martin was hired for the GS-12 position in Sacramento.

On March 17, 2001, plaintiff was informed that she had been denied and instead Martin was given the GS-12 position. Id. at

2

¶¶ 11, 13.  Plaintiff filed an EEO discrimination claim on May 25, 2001, id. at ¶ 13, but because she missed the procedural 45-day deadline for filing an EEO claim, the Office of Resolution Management dismissed it.  Pl.'s SUF at ¶ 12.  In October of 2002, however, the EEOC's Administrative Law Judge reinstated the claim and plaintiff obtained a waiver of the 45 day procedural requirement.  Id.

Plaintiff alleges that as soon as Martin assumed her duties in the GS-12 position, Martin began to create a hostile work environment.  Compl. ¶ 15.  Her allegations are based on a number of communications that Martin had with plaintiff regarding her work performance.  Def.'s SUF 29.  According to the parties, although there were no "set" performance standards, Hargrove Dep. at 38:1-5, records showed that Martin was doing much more work than plaintiff. Def.'s SUF at ¶ 29.  Martin met with plaintiff on June 21, 2001, and outlined tasks for plaintiff.  Id. at ¶ 31.  Plaintiff responded by telling Martin to "stop harassing" her.  Id. at ¶ 30. According to plaintiff, every task given to her by Martin was motivated by discrimination or retaliation.  Id. at ¶ 34.  For example, she claims that every email sent by Martin, even if there was nothing offensive or even substantive in the communication, constituted discrimination and retaliation.  Id. at ¶ 36. Plaintiff acknowledges, however, that Martin also communicated with other social workers by email.  Id. at ¶ 40.  Moreover, when plaintiff was given a memorandum about performance issues (without any corresponding discipline), she was unable to address any

3

inaccuracies when asked what was false or inaccurate about the memorandum. Id. at ¶ 43. Plaintiff concedes that Martin also had concerns about another employee's performance, who is Caucasian, and that Martin also gave her a performance memorandum. Id. at ¶ 44. Plaintiff also received a mid-year evaluation which contained both positive comments and areas for improvement. Id. at ¶ 46. Plaintiff acknowledges that Martin met with all employees under her supervision and also gave them a mid-year counseling. Id. On October 23, 2003, the VA held a mandatory retreat in Vacaville. Because plaintiff did not attend, she was charged AWOL (absent without leave). Id. at ¶ 47.

Plaintiff concedes that, although she was unhappy in her assignment to an ambulatory care social work position under Martin's supervision, the placement decision was not motivated by retaliation. Id. at ¶¶ 20-21. She also concedes that Hargrove and Martin never discriminated against her before she contacted an EEO counselor on May 25, 2001. Id. at ¶ 19. Martin never made any comment to plaintiff that plaintiff considered racist. Id. at ¶ 26. Hargrove, Martin and O'Neill never made any comments regarding treating plaintiff differently because she had filed an EEO claim. Def.'s SUF at ¶ 25. Plaintiff further concedes that Dr. O'Neill never engaged in discrimination or retaliation against her before selecting Martin for the GS-12 position or after selecting Martin for the position. Id. at ¶ 16. Plaintiff has no information that Dr. O'Neill ever had any discussions with Hargrove or Martin about plaintiff, and did not give them any directions

4

about what to do with plaintiff.  Id. at ¶ 22.

## II.

### SUMMARY JUDGMENT STANDARDS UNDER FED. R. CIV. P. 56

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); See also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Limited v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995).

Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily

5

1  renders all other facts immaterial." Id.  In such a circumstance,
2  summary judgment should be granted, "so long as whatever is before
3  the district court demonstrates that the standard for entry of
4  summary judgment, as set forth in Rule 56(c), is satisfied." Id.
5  at 323.
6      If the moving party meets its initial responsibility, the
7  burden then shifts to the opposing party to establish that a
8  genuine issue as to any material fact actually does exist.
9  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
10 586 (1986); See also First Nat'l Bank of Ariz. v. Cities Serv. Co.,
11 391 U.S. 253, 288-89 (1968); Secor Limited, 51 F.3d at 853.
12     In attempting to establish the existence of this factual
13 dispute, the opposing party may not rely upon the denials of its
14 pleadings, but is required to tender evidence of specific facts in
15 the form of affidavits, and/or admissible discovery material, in
16 support of its contention that the dispute exists.  Fed. R. Civ.
17 P. 56(e); Matsushita, 475 U.S. at 586 n.11; See also First Nat'l
18 Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir.
19 1998).  The opposing party must demonstrate that the fact in
20 contention is material, i.e., a fact that might affect the outcome
21 of the suit under the governing law, Anderson v. Liberty Lobby,
22 Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Assoc. of
23 Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992)
24 (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,
25 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine,
26 i.e., the evidence is such that a reasonable jury could return a

6

verdict for the nonmoving party, Anderson, 477 U.S. 248-49; see also Cline v. Industrial Maintenance Engineering & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 1999).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; See also T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); see also International Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); See also In re Citric Acid Litigation, 191 F.3d 1090, 1093 (9th Cir. 1999). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); See also Headwaters Forest Defense v.

7

1  County of Humboldt, 211 F.3d 1121, 1132 (9th Cir. 2000).
2  Nevertheless, inferences are not drawn out of the air, and it is
3  the opposing party's obligation to produce a factual predicate from
4  which the inference may be drawn.  See Richards v. Nielsen Freight
5  Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d
6  898, 902 (9th Cir. 1987).
7       Finally, to demonstrate a genuine issue, the opposing party
8  "must do more than simply show that there is some metaphysical
9  doubt as to the material facts. . . . Where the record taken as a
10 whole could not lead a rational trier of fact to find for the
11 nonmoving party, there is no 'genuine issue for trial.'"
12 Matsushita, 475 U.S. at 587 (citation omitted).

**III.**

**ANALYSIS**

**A.   FAILURE TO SELECT**

Before reaching the merits of plaintiff's failure to select claim, I must first address the threshold issue of whether this claim is time-barred.  Under EEOC regulations, "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105.  The 45-day time limit is treated as a "statute of limitations for filing suit and is subject to waiver, equitable tolling, and estoppel."  Johnson v. United States Treasury Dept., 27 F.3d 415, 416 (9th Cir. 1994) (quoting Miles v. Dept. of the Army, 881 F.2d 777, 780 (9th Cir. 1989)); see also

8

Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982) (holding that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling").

Although plaintiff filed her EEO claim after the 45-day deadline, plaintiff's claim was reinstated by the administrative judge in December 2002. Pl.'s Opp'n Ex. A. The Hearing Order states that "in addition to the issues identified in the Report of Investigation, the hearing . . . will include complainant's non-selection relating to the supervisory social worker position in 2000 . . . ." Id. The reinstatement of plaintiff's claim plainly constituted a waiver of the filing deadline.

Further, contrary to defendant's assertions that plaintiff failed to exhaust her administrative remedies, Def.'s Repl. at 4, the EEO issued a final agency decision denying her relief on the failure to select claim. Pl.'s Opp'n Ex. A. Accordingly, this Court may properly review plaintiff's failure to select claim.

### 1. **Failure to Select in 2000**

In order to establish a prima facie case for discrimination based on a failure to select, plaintiff must show that (1) she belongs to a racial minority, (2) she applied and was qualified for a job the employer was trying to fill, (3) she was subjected to adverse employment action; and (4) that similarly situated individuals who did not belong to her protected class were treated more favorably. Aragon v. Republic Silver State, 292 F.3d 654, 658

9

1  (9th Cir. 2002); McDonnell Douglas Corp. v. Green, 411 U.S. 792,
2  802 (1973).
3      It is undisputed that plaintiff satisfies the first two
4  elements.  The evidence also establishes that plaintiff suffered
5  an adverse employment action when she was not promoted to the GS-12
6  position.  Further, it is undisputed that the GS-12 position was
7  given to Miller, a person outside of plaintiff's protected class.
8      Because plaintiff has established a prima facie case,
9  defendant bears the burden of producing evidence of a legitimate,
10 non-discriminatory reason for its employment decision. Texas Dept
11 of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).  Here,
12 defendant asserts that its selection of Martin over plaintiff was
13 based on Martin's qualifications and had nothing to do with the
14 race of the applicants.  It asserts that Dr. O'Neill was very
15 impressed with Martin's qualifications and that, after hiring
16 Hargrove for the GS-13 position and learning of the GS-12 vacancy,
17 he decided to hire Martin for this position.  It is undisputed that
18 Dr. O'Neill's interaction with Martin took place only by telephone
19 and that he did not know her race.  The evidence also shows that
20 Martin already held a GS-12 position, so that her hiring was
21 lateral and not a promotion.  Based on the foregoing, defendant
22 sufficiently establishes a non-discriminatory, legitimate basis for
23 the hiring of Martin and non-promotion of plaintiff.
24     The question now becomes whether plaintiff can put forward any
25 evidence to dispute defendant's proffered legitimate reasons for
26 its decision, thus creating a triable issue either as to pretext

10

1  or as to defendant's "true" motive.  See Burdine, 450 U.S. at 256.
2  Plaintiff fails to even attempt to show that the defendant's
3  alleged non-discriminatory reason is pretextual.  Instead,
4  plaintiff states that the defendant has not presented a non-
5  discriminatory reason, and goes no further.[1]  Because, as explained
6  above, defendant has in fact met its burden, and plaintiff has not,
7  the court cannot find that there is a triable issue regarding this
8  cause of action.  Accordingly, summary judgment must be granted in
9  defendant's favor.

### 2. **Failure to Select in 2003**

11  Plaintiff alleges in her complaint that after Martin was
12 promoted and left her position in Sacramento, plaintiff again
13 applied for the GS-12 position and was again passed over.
14 Plaintiff contends that a less qualified Caucasian candidate was
15 selected for the position, and when the position became available
16 a second time, another less qualified Caucasian was selected
17 instead.  While these allegations may support a discrimination
18 claim, plaintiff stated in her deposition that she never filed an
19 EEO claim as a result of those decisions, and that she does not
20 bring a cause of action for discrimination or retaliation based on
21 those facts.  Pl.'s Dep. II at 42: 9-22.  Instead, in her

---

[1] Plaintiff complains that the process by which Martin was selected violated the merit system principles for promotions within the Department.  Pl.'s Opp'n. at 7.  Assuming that is so, the fact that Dr. O'Neill may have failed to follow internal policies does not show that the non-discriminatory reason is pretextual.  At most, it shows that the hiring was procedurally defective. Plaintiff fails to show how this defect is proof of a discriminatory motive.

11

1  opposition brief, plaintiff argues that these allegations show that
2  there exists a triable issue of fact as to whether the VA violated
3  the merit system rules for the Department set forth under 5 U.S.C.
4  § 2301(b).  Such a claim is not found in her complaint, however,
5  and of course, she cannot now raise this cause of action at this
6  procedural posture.

7  **B.   RACIAL HARASSMENT**

8  Plaintiff also alleges that she was subjected to "pervasive
9  racial harassment" at the VA.  Compl. at ¶ 23.  A plaintiff may
10 prove racial harassment by demonstrating that an employer has
11 created a hostile or abusive work environment. Meritor Savings
12 Bank v. Vinson, 477 U.S. 57, 65-67 (1986).  To prevail on a hostile
13 workplace claim premised on race, plaintiff must show: (1) that she
14 was subjected to verbal or physical conduct of a racial nature; (2)
15 that the conduct was unwelcome; and (3) that the conduct was
16 sufficiently severe or pervasive to alter the conditions of the
17 plaintiff's employment. Vasquez v. County of L.A., 349 F.3d 634,
18 642 (9th Cir. 2003)(citing Gregory v. Windnall, 153 F.3d 1071, 1074
19 (9th Cir. 1998)).  To demonstrate a hostile work environment, a
20 plaintiff must show that the environment is abusive from both a
21 subjective and an objective viewpoint. See Harris v. Forklift
22 Systems, Inc., 510 U.S. 17, 21-22 (1993).  In assessing the
23 objective hostility of a work environment, the court considers a
24 variety of factors, including "the frequency of discriminatory
25 conduct, its severity, whether it is physically threatening or
26 humiliating, or a mere offensive utterance, and whether it

unreasonably interferes with an employee's work performance." Nichols v. Azteca Rest. Enters., 256 F.3d 864, 872 (9th Cir. 2001).

As I explain below, nothing in the record indicates that plaintiff was subjected to a hostile work environment. Plaintiff concedes that neither Martin nor Dr. O'Neill ever made any comment to plaintiff that she considered racist. Def.'s SUF at ¶ 26. She did, however, consider Martin's emails to be harassment, even if there was nothing offensive or even substantive in the communication. Id. at ¶ 36. She also considered Martin's requests and directives as harassment. Id. at ¶ 34. In contrast to a claim for retaliation or failure to select, a claim for hostile work environment requires verbal or physical conduct of a racial nature. These communications, however, as conceded by plaintiff, did not include even one "offensive utterance." Accordingly, plaintiff's claim for a hostile work environment fails and must be ruled upon in defendant's favor.

**C.   RETALIATION**

Plaintiff also alleges that Martin and Hargrove retaliated against her after they learned about her complaints to the EEOC. Compl. at ¶ 27. In order to establish a prima facie case for retaliation, plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two. Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000). "Thereafter, the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden,

13

plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Only then does the case proceed beyond the summary judgement stage." Id.

Plaintiff satisfies the first element because the filing of an EEO complaint is a protected activity. Further, in the Ninth Circuit, an undeserved negative performance review can constitute an adverse employment decision. Brooks, 229 F.3d at 928. Plaintiff's mid-year counseling report contained a negative evaluation of plaintiff's performance in key areas and plaintiff was charged with AWOL when she failed to attend a mandatory retreat in Vacaville. Def.'s SUF. at ¶¶ 46-47. Therefore, plaintiff has arguably suffered an adverse employment decision. Plaintiff can also establish a causal link between the filing of the EEO claim and the negative reviews based on the proximity of the two actions. See Ray v. Henderson, 217 F.3d 1234, 1244 (9th Cir. 2000) (Causal link may be demonstrated by showing that "each action was implemented close on the heels of the protected activity . . .").

While a prima facie case can be made for retaliation, defendant offers legitimate reasons for the negative reviews by showing that they were not undeserved. Within the mid-year counseling report, under a section entitled "Professional Responsibilities/Relationships," the report states that plaintiff "demonstrated disregard for department needs when taking leave precipitously." Pl.'s Dep. II, Ex. 29. The report also indicates that plaintiff's resistance to meeting with her supervisor made it

14

1  "impossible to maximize the energy and resources in the department
2  to provide optimal patient service."  Id.   Plaintiff does not
3  dispute that she did not attend the mandatory retreat, Def.'s SUF
4  at ¶ 47, nor does she dispute defendant's assertion that "despite
5  Martin's repeated requests, [she] refused to meet with Martin to
6  discuss [her] work . . . performance."  Id. at ¶ 31.  Because these
7  facts are undisputed, defendant has met its burden by providing a
8  legitimate basis for adverse employment actions.
9       In response to defendant's proffered legitimate reason for the
10 negative performance reviews, plaintiff asserts only that there
11 were no "set performance standards" with respect to patient
12 contacts.  That claim is unresponsive to defendant's stated reason,
13 however, since the performance review was largely based on
14 plaintiff's failure to meet with her supervisor.  Furthermore, the
15 lack of established performance standards does not preclude the
16 existence of non-written performance expectations of employees,
17 such as attendance and meeting with supervisors.  Moreover,
18 plaintiff concedes that all employees under Martin's supervision
19 were required to attend a mid-year counseling, and that Martin had
20 concerns and gave another non-protected group employee a memorandum
21 regarding her work performance.  Id. at ¶ 46.  Still, plaintiff
22 insists that others similarly situated to her were not subject to
23 the same negative performance reviews, but then does not present
24 any direct or circumstantial evidence to support her allegation.
25 ////
26 ////

15

1  Accordingly, plaintiff fails to meet her burden to show that
2  defendant's reasons for the acts complained of are pretextual and
3  summary judgment must be granted to defendant.

## IV.

## CONCLUSION

For all the foregoing reasons, defendant's motion for summary judgment is hereby GRANTED and the Clerk is directed to CLOSE the case.

IT IS SO ORDERED.

DATED:  August 8, 2005.

/s/Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT